**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| SAMUEL K. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 3:13-0146 |
| | ) | |
| BUFFALOE & ASSOCIATES, PLC, and | ) | Judge Trauger |
| ADVANTAGE ACCEPTANCE CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Before the court are a number of motions, including plaintiff Samuel K. Robinson's motion to amend his complaint (ECF No. 53), filed along with his proposed First Amended Complaint (ECF No. 53-1); the Rule 12(b)(6) motions to dismiss filed by defendants Buffaloe & Associates, PLC ("Buffaloe") and Advantage Acceptance Corp. ("Advantage") (ECF Nos. 8 and 39); and the plaintiff's own motion for summary judgment (ECF No. 14). The undersigned will withdraw the referral to the magistrate judge and rule directly on these motions.

**I.      MOTION TO AMEND COMPLAINT**

Where there are pending before the court both a dispositive motion and a motion to amend the complaint, the court must first address the motion to amend complaint. *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988).

Federal Rule of Civil Procedure 15(a)(1)(B) permits amendment as a matter of course within 21 days of service of a motion under Rule 12(b). However, if a plaintiff wishes to file an amended complaint after the 21-day grace period, the plaintiff is required to seek leave of court to do so. Fed. R. Civ. P. 15(a)(2); *Middleton v. Rogers Ltd.*, 804 F. Supp. 2d 632, 639 (S.D. Ohio 2011). Rule 15(a)(2) states that when a party is required to seek leave of court in order to file an amended pleading, "[t]he court should freely give leave when justice so requires."

The United States Court of Appeals for the Sixth Circuit has spoken extensively on this standard, relying upon the decisions of the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971). In *Foman*, the Court indicated that Rule 15(a)(2) is to be interpreted liberally, and that in the absence of undue delay, bad faith, or

dilatory motive on the part of the party proposing an amendment, leave should generally be granted. *Foman*, 371 U.S. at 182. In *Zenith Radio*, the Court indicated that mere delay, of itself, is not a reason to deny leave to amend, but delay coupled with demonstrable prejudice either to the interests of the opposing party or of the court can justify such denial. *Zenith Radio*, 401 U.S. at 330–31.

Expanding upon these decisions, the Sixth Circuit has held that the determination of whether the prejudice a proposed amendment may cause to the opposing party is "undue" requires the court to focus on, among other things, whether an amendment at any stage of the litigation would make the case unduly complex and confusing, *see Duchon v. Cajon Co.*, 791 F.2d 43, 48 (6th Cir.1986) (per curiam), and to ask if the defending party would have conducted the defense in a substantially different manner had the amendment been tendered previously. *See, e.g.*, *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) ("General Electric simply does not argue that it would have done anything differently had the defense been presented in Sargent & Lundy's initial answer."); *see also Davis v. Therm-O-Disc, Inc.*, 791 F. Supp. 693 (N.D. Ohio 1992) (citing *Gen. Elec. Co.*, 916 F.2d at 1130).

The Sixth Circuit has also identified a number of additional factors which the district courts must take into account in determining whether to grant a motion for leave to file an amended pleading. These include whether there has been a repeated failure to cure deficiencies in the pleading and whether the amendment itself would be an exercise in futility. *Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 591 (6th Cir. 1990); *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). The court may also consider whether the matters contained in the amended complaint are unrelated to the claims in the original complaint. *Hetep v. Warren*, 27 F. App'x 308, 309 (6th Cir. 2001); *cf. George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (noting, based on Rule 18(a), that "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits" in order to avoid unnecessary complexity and confusion). It is with these standards in mind that the instant motion to amend will be decided.

In this case, the plaintiff's motion to amend his complaint was filed more than 21 days after Buffaloe filed its motion to dismiss under Rule 12(b)(6). Advantage's motion to dismiss, which simply adopted Buffaloe's arguments in support of its motion, was filed less than 21 days prior to the plaintiff's

motion to amend his complaint. Notwithstanding, it is clear that the plaintiff's motion to amend his complaint was not in any sense a response to the defendants' motions to dismiss, as he did not seek to address any deficiencies in his original complaint. Instead, he seeks to assert new claims against new defendants that are wholly unrelated to the claims set forth in his original complaint, as discussed in greater detail below. For that reason, and because the motion to amend was filed more than 21 days after Buffaloe's motion to dismiss, the Court finds that Rule 15(a)(1)(B) does not apply, such that the plaintiff will not be permitted to amend his complaint without leave of court. The court further finds, as discussed below, that such leave should not be granted.

As an initial matter, the court finds that the proposed amended complaint does not comply with Rule 8(a) of the Federal Rules of Civil Procedure, because it does not contain "a short and plain statement of the grounds for the court's jurisdiction," Fed. R. Civ. P. 8(a)(1), or "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), nor does it identify the relief sought from the persons the plaintiff seeks to add as defendants.

Instead, the plaintiff identifies the proposed new defendants, including Orchard Park Apartments, Elizabeth Cathy, William Trusty, "Unknown Maintenance Employee," and attorney Gary Rubenstein (ECF No. 53-1, at 1), and states that, besides adopting and restating the facts and claims set forth in the original complaint, he "submits as facts previously submitted as a statement of the facts in his objections of April 4, 2013 (Docket Entry No. 29), his Response of April 15th, 2013 (Docket Entry No. 31), his motion for leave to file[] amended response and attachment of April 17th, 2013 (Docket Entry No. 33), his objections of April 23, 2013 (Docket Entry No. 42) and his current motion for default judgment and objections of April 29th, 2013 [(Docket Entry No. 54)]." (ECF No. 53-1, at 1–2 ¶ 7.) He does not state any facts supporting his new claims in the proposed amended complaint itself.

Likewise, instead of asserting claims for relief against those persons he seeks to add as defendants, the plaintiff "resubmits as claims for relief all such claims as were stated in the original Complaint" (ECF No. 53-1, at 2), and adds:

> (A) Defendant, Gary Rubenstein, willfully knowingly initiated a state process against Plaintiff in violation of due process of law, and under color of state law;
>
> (B) Defendants, Gary Rubenstein, Elizabeth Cathy, William Trusty and unknown maintenance employee conspired against the right of the Plaintiff to access this Court and retaliated against the Plaintiff for the same, under color of state law in the usage of a

law enforcement official[.]

(ECF No. 53-1, at 2.)

In short, this pleading is patently unacceptable, as a matter of form, because it does not provide a short, plain statement of the facts supporting the plaintiff's claims or the relief sought against the new defendants. Further, because the proposed amendment purports to incorporate statements made in five separate prior filings, there is no single, unified pleading that the putative defendants could answer. *See* Fed. R. Civ. P. 8(d) ("Each allegation must be simple, concise, and direct."); Fed. R. Civ. P. 10(b) "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."). Moreover, the actual documents cross-referenced in the proposed amended complaint do not comply with Rules 8 or 10 either and are not in a form that is answerable by any of the proposed new defendants. On this basis alone, the plaintiff's motion to amend his complaint would be subject to denial.

Second, even if the court considers the allegations made in the cross-referenced documents, the court finds that the amendment should not be permitted because the proposed new claims and new defendants are wholly unrelated to the claims in the original complaint. In his original complaint, the plaintiff names as defendants Buffaloe, a law firm, and Advantage, a creditor with which the plaintiff arranged for the financing of a vehicle he purchased in May 2008. In his original complaint, he purports to assert claims under the Fair Debt Collection Practices Act ("FDCPA") and 42 U.S.C. § 1983 in connection with the practices employed by Buffaloe and Advantage to collect the debt associated with the car loan. The proposed new defendants are Orchard Park Apartments, three employees of Orchard Park Apartments, and attorney Gary Rubenstein, who represents Orchard Park Apartments. (ECF No. 53-1, at 1.) The plaintiff's claims against these persons, as best the court can tell from reviewing the voluminous filings to which the plaintiff refers in his proposed amended complaint (ECF Nos. 29, 29-1, 31, 33, 42, and 54) arise from the plaintiff's belief that the individuals associated with his apartment complex are somehow in a conspiracy with the defendants named in the original complaint.[1] The sole factual basis for

---

[1] The cross-referenced documents also contain allegations against individuals with whom the plaintiff formerly worked at Kentucky Fried Chicken and document the plaintiff's belief that these individuals too are in a conspiracy with the attorneys at Buffaloe. The plaintiff states in one of his filings, however, that he is "voluntarily relinquish[ing]" any possible claims against KFC employees "for simplicity rather than complication." (ECF No. 54, at 14.)

the alleged conspiracy is that the plaintiff is apparently in eviction proceedings with Orchard Park Apartments, and the eviction procedure employs a General Sessions Court civil warrant similar to the one served upon the plaintiff by Buffaloe in connection with the car loan.[2] The other "evidence" to which the plaintiff points is that someone tampered with his and his fiancé's laundry (in the apartment complex's laundry room) on several occasions, once by taking out his fiancé's socks and replacing them with baby socks and another time by stealing the plaintiff's laundry altogether; the plaintiff's vehicle has been scratched; some unknown person allegedly tampered with the lock to his apartment; the apartment's management staff has harassed the plaintiff and his fiancé and refused to repair essential items at the apartment, specifically the air conditioning unit; and a maintenance employee entered the plaintiff's apartment without authorization, when the plaintiff was not present. The plaintiff believes all these events (and others) are related to this lawsuit and are evidence of a conspiracy among the attorneys at Buffaloe and the management of the plaintiff's apartment complex. The plaintiff points to no actual facts to support the existence of such a conspiracy beyond his own speculation and conjecture. Speculation and conjecture are not facts.

The claims asserted in the proposed amended complaint are completely unrelated to the claims in the original complaint. Amending the complaint to add these proposed new claims would therefore be inappropriate. *See Hetep v. Warren*, 27 F. App'x 308, 309 (6th Cir. 2001) (holding a district court does not abuse its discretion in denying a motion to amend where the motion to amend "sought to allege new, unrelated claims against new defendants"); *Dean v. Brandon*, 162 F.3d 1161 (Table), 1998 WL 552683, at *1 (6th Cir. Aug. 13, 1998) (same). For this reason, too, the motion to amend the complaint is subject to denial.

And finally, even if the court were inclined to overlook the previously discussed deficiencies in the proposed amendment, the fact remains that permitting the plaintiff to amend the complaint to assert new claims against the new defendants would be futile, because the plaintiff has not alleged facts that suggest that any of the proposed new defendants are state actors or that they engaged in actions that would

---

[2] One of the exhibits submitted with the plaintiff's filings is a letter from attorney Gary Rubenstein, representing Orchard Park Apartments, giving notice to the plaintiff that his lease is being terminated "for violence or threats to the health, safety, or welfare of persons or property," and refers to events "involving threatening and potentially violent behavior" on March 27, 28, 30, and April 1, 2013. (ECF No. 29-1, at 1.)

violate the plaintiff's federal or constitutional rights, for purposes of establishing federal jurisdiction over his claims.

Accordingly, the plaintiff's motion to amend his complaint will be denied on the basis that the proposed amendment fails to comply with the federal pleading rules, because the plaintiff seeks to add new claims against new defendants that are unrelated to his original claims, and because the proposed amendment would be futile insofar as it fails to state a claim for which relief could be granted in this court.

## II.     THE DISPOSITIVE MOTIONS

This matter arises from a debt owed to Advantage for the purchase of a vehicle by the plaintiff in May 2008. At some point, the plaintiff lost his job and began making sporadic payments on the vehicle, which Advantage accepted for a period of time. Eventually, however, Advantage sent a letter to the plaintiff demanding payments in the contract amount and later demanded return of the vehicle.

The plaintiff filed for bankruptcy protection in October 27, 2009. Although the plaintiff does not state as much in his complaint, the public filings in the bankruptcy case indicate that the case was dismissed based on the plaintiff's failure to appear at the scheduled meeting of creditors. *In re Robinson*, Case No. 3:09-bk-12340 (M.D. Tenn. B'cy Dec. 2, 2009) (Order, ECF No. 24).

According to the plaintiff, Advantage violated the automatic stay and repossessed the vehicle prior to the dismissal of the bankruptcy petition. The plaintiff then began receiving correspondence from Buffaloe, making a demand for the balance of the debt around January 11, 2010. The plaintiff responded by denying liability for the debt. The plaintiff did not receive further correspondence from the defendants.

Attorneys at Buffaloe, on behalf of Advantage, instituted a civil action against the plaintiff in the General Sessions Court for Davidson County, Tennessee on or around April 1, 2011. Service was not made at that time. Service was re-attempted on December 13, 2012, at which time the plaintiff was effectively served. In response, the plaintiff again filed for bankruptcy protection on January 23, 2013. *In re Robinson*, No. 3:13-bk-00532 (M.D. Tenn. Jan. 23, 2013) (Ch. 7 Vol'y Petition, ECF No. 1). The General Sessions lawsuit was dismissed without prejudice on January 30, 2013.

The plaintiff's complaint in this court was filed on February 15, 2013 and alleges violations of the plaintiff's civil rights and the FDCPA. In summary, the plaintiff alleges that:

1. Civil warrants issued by the General Sessions Court clerk and served by private parties instituting actions in that court allegedly do not afford debtors proper notice of the

claims and allegations brought against them, in contravention of the Due Process and Equal Protection Clauses of the United States Constitution (Compl. § I ¶ (A)).

2. Civil warrants allegedly violate a debtor's due-process rights as they subject the debtor to the threat of arrest or deprivation of property (Compl. § I ¶¶ (B) and (D)).

3. The creation by the Tennessee Legislature of the General Sessions Court and the use of civil warrants violate the Due Process and Equal Protection rights afforded citizens under the Constitution (Compl. § I ¶¶ (C) and (E)).

4. Attorneys and plaintiffs have an unfair advantage over defendants who are not familiar with the General Sessions judges (Compl. § I ¶ (F)).

5. Buffaloe allegedly files suits in General Sessions Court to violate debtor's rights afforded them under the Due Process and Equal Protection clauses (Compl. § I ¶ (G)).

6. The defendants filed suit in General Sessions Court in retaliation for the plaintiff's having filed for bankruptcy protection (Compl. § I ¶ (H), (I), and § VI ¶ (A)).

7. Defendant Buffaloe allegedly uses the color of state authority through the use of civil warrants and fraudulently fails to disclose that it does not actually have this authority (Compl. § I ¶ (J) and §VI ¶ (A)).

The plaintiff appears to allege that the same actions violate the FDCPA.

The plaintiff seeks relief in the form of compensatory, punitive, and statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(a); a declaration that civil warrants, as used by the defendants, are vague and ambiguous and do not afford defendants proper due-process and equal-protection safeguards; and a permanent injunction against Buffaloe from filing actions in General Sessions Court.

The defendants seek dismissal of the case against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that, even if the plaintiff's allegations are accepted as true, the complaint fails to state a claim against them because (1) the plaintiff did not suffer the deprivation of any federally protected rights and in fact was not harmed by the filing of the General Sessions Court action against him, because the case was non-suited prior to entry of judgment; (2) neither Buffaloe nor Advantage was acting as a state actor for purposes of liability under 42 U.S.C. § 1983; and (3) as a matter of law, the use of a civil warrant does not violate the FDCPA.

In response to the defendants' motion to dismiss, the plaintiff filed his own motion for summary judgment, in which he reiterates his claim that the defendants' actions in serving him with a civil warrant to appear in General Sessions Court violated his rights under the Fourth and Fourteenth Amendments. The plaintiff asserts that, as a result of service of the warrant, he was "no longer free beyond the order of

the General Sessions court," because he was under "compulsion from authority of the state under color of law" to respond to the warrant. (ECF No. 14, at 8.) He compares the situation to a police officer's issuance of a criminal misdemeanor warrant setting a mandatory court date and claims he was deprived of life and liberty as a result of the time he personally had to expend to appear in court, regardless of the fact that, as defendants claim, no judgment was entered against the plaintiff. The plaintiff contends on this basis that "the 'civil warrant' process . . . are violations [sic] of both procedural and substantive due process guarantee, since, the 'civil warrant' process is an established state procedure, and since it egregiously violates the Fourth Amendment in various ways, excessively intrusive of both life and liberty," because civil warrants are issued without any requirement that probable cause be established. (*Id.* at 9.) The plaintiff argues that the defendants were acting "under color of state law" for purposes of 42 U.S.C. § 1983. In support of his FDCPA claims, he simply states that "all such actions as described above are also violations of the Fair Debt Collection Practices Act" and "resubmits the arguments previously rendered." (ECF No. 14, at 24.)

The defendants did not file a reply brief or, despite the magistrate judge's orders directing them to do so, a response in opposition to the plaintiff's motion for summary judgment. Instead, their response came in the form of a document styled "Defendant Buffaloe & Associates, PLC Motion [sic] to Respond to Plaintiff's Objections and Clarification of Pending Motions" (ECF No. 30), in which the defendants state: "Defendant Buffaloe [and, by extension, defendant Advantage] . . . opposes Plaintiff's motions and categorically denies the allegations contained therein. Further, Defendant Buffaloe would respectfully note that Plaintiff's inability to properly respond to the Court's orders has made it difficult to engage in any meaningful and relevant response to the allegations raised against it. . . ." (ECF No. 30, at 1.)

A.    **Standard of Review**

*(1)    Motions to Dismiss*

Rule 12 (b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted."[3] In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft*

---

[3] Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." The plaintiff's motion to convert the defendants' motions to dismiss into motions for summary judgment was denied. In

*v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard for determining whether a complaint is subject to dismissal under Rule 12(b)(6). In *Twombly*, 550 U.S. 544 (2007), the Court held that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations and punctuation omitted). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In *Iqbal*, the Court further explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Second, the facts as pleaded must show a "plausible" claim for relief; thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In ruling on a motion to dismiss, the court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Further, although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the court's "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### *(2)    Motion for Summary Judgment*

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In other words, even where the facts are undisputed, or are undisputed for purposes of the motion for summary judgment, the moving party will not be entitled to relief if he does not show that the undisputed facts establish the existence of each "element essential to [his] case, and on which [he]

---

considering the defendants' motions, the court has not considered matters outside the pleadings and the public record.

will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B.      Defendants' Motions to Dismiss**

*(1)      Civil Rights Claims*

The plaintiff seeks to bring suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 creates a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n.3 (1984); *Stack v. Killia*n, 96 F.3d 159, 161 (6th Cir. 1996). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2002) (citations omitted); 42 U.S.C. § 1983. The defendants here argue that the plaintiff has failed both to establish a violation of his federal civil rights and to show that the defendants acted under color of state law.

*a.   Whether Defendants Acted Under Color of State Law*

The plaintiff appears to contend that Buffaloe, and by extension Advantage, acted under "color of state authority" by procuring a civil warrant issued by the court clerk and serving it upon the plaintiff. The plaintiff analogizes a civil warrant to a misdemeanor warrant or criminal complaint, insofar as it compelled his presence at a pre-set date before the General Sessions judge. In his complaint, the plaintiff implies that the defendants acted under color of state law because they have "intimate knowledge of law" and knowingly and maliciously "utilize[d] state process that they know in advance are constitutionally infirm and deficient, in order to gain unfair and illegal advantage over civil defendants and maximize profits." (ECF No. 1 at ¶ 1(G).) The plaintiff also appears to assert that Buffaloe, specifically, was acting under color of law based on its attorneys' intimate familiarity with the judges in General Sessions Court who, by implication, are biased toward plaintiffs' attorneys who regularly appear in that court. The plaintiff's allegations may plausibly be construed to imply that the close relationship between Buffaloe and the General Sessions Court make Buffaloe a state actor for purposes of § 1983 claims.

The law is clear that "[a] plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). There are, however, "circumstances

under which private persons may, by their actions, become 'state actors' for § 1983 purposes." *Id.* The Sixth Circuit recognizes three tests for determining whether private conduct is fairly attributable to the state: (1) the public-function test, which requires that the private entity exercise powers that are traditionally reserved for the state; (2) the state-compulsion test, which requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state; and (3) the nexus test, which requires a sufficiently close relationship, such as through state regulation or contract, between the state and the private actor so that the action may be attributed to the state. *Id.* at 591 (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)).

In response to the defendants' motions to dismiss, the plaintiff, while acknowledging that courts apply the public-function test narrowly (ECF No. 14, at 20), contends that the public-function test is satisfied in this case because Buffaloe's service of a civil warrant upon him "functions to arrest a person to compel their person to appear to answer in court" and that this is an "action preserved for police officers and sheriffs." (*Id.* at 21.) In addition, the plaintiff argues that the requirements of the nexus test are met because the clerk of the General Sessions Court issues the civil warrant at a party's request, and the warrant is then served by the party, "so that such action becomes one in the same as if issued by the clerk. Without the issuance from the clerk of the General Sessions court, service of the document is not possible, more effectively perceived when considering that such a document also constitutes a court order." *Id.* Finally, the plaintiff contends that a party's service of a civil warrant, issued by the court clerk and compelling a defendant's presence in court, falls under the state-compulsion test as well, in light of the "vague and ambiguous nature of the 'civil warrant' statute, which significantly encourages manipulation and deceit, as illustrated by the present case, is itself self-evident, so that if not for the vague and lackadaisical construction of the statute at issue, neither, then, would manipulation or illegality be at issue." (*Id.*)

The court is not persuaded by the plaintiff's arguments. With respect to the nexus test, this court's review of case law reveals the application of this test to be very restrictive. "[T]he Sixth Circuit has made clear that the ties between the private party and the State must be substantial." *Jackim v. City of Brooklyn*, No. 1:05 cv 1678, 2007 WL 893868, at *24 (N.D. Ohio Mar. 22, 2007) (citing *Wolotsky v. Huhn*,

960 F.2d 1331, 1335 (6th Cir. 1992)). Although determinations of state action under the nexus test necessarily depend on the unique facts and circumstances presented by each individual case, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982), the Sixth Circuit has held that the plaintiff must demonstrate "that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983." *Wolotsky*, 960 F.2d at 1335. Under established Supreme Court precedent, it is clear that state regulation of a private entity's operations, even if such "regulation is extensive and detailed," does not establish state action via the nexus test. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974). Public funding of nearly all of the private actor's activities, as well as the private actor's use of public property, are similarly insufficient to establish the required nexus. *See, e.g.*, *Blum v. Yaretsky*, 457 U.S. 991 (1982); *Wolotsky*, 960 F.2d at 1336. Action taken by private entities with the mere approval or acquiescence of the State is not state action. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Likewise, "[p]rivate use of state-sanctioned private remedies or procedures does not rise to the level of state action." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988) (citation omitted).

In this case, as the defendant argues, the state of Tennessee established the courts of General Sessions under Tenn. Code Ann. § 16-15-101, for the purpose of providing a state-wide system of "inferior" courts to handle matters traditionally resolved by a justice of the peace and to provide citizens of Tennessee a fast and inexpensive means of resolving relatively small disputes. 17 Tenn. Jur. *Justices of the Peace and General Sessions Court* § 2 (2012). The procedure for the issuance and service of civil warrants is set forth in Tenn. Code Ann. § 16-15-901. This procedure is open to any person instituting a lawsuit in General Sessions Court—it does not require any special nexus or relationship between the plaintiff and the State. The mere fact that the defendants here availed themselves of a procedure created by state law and made available to any person filing a lawsuit within the jurisdictional parameters of the General Sessions Courts of Tennessee does not create a sufficiently close nexus between the defendants here (or any person availing himself of the statutorily created procedure) and the state to establish that the defendants were functioning as state actors for purposes of § 1983.

The act of issuing and serving a civil warrant to appear in General Sessions Court does not meet the public-function test either. Under this test, "a private party is deemed a state actor if he or she

exercised powers traditionally reserved exclusively to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). This test, too, has typically been interpreted very narrowly, and has been utilized to find state action on the part of a private actor only in rare circumstances. *Id.* at 833-34. The relatively short list of examples of state action under the public-function test illustrates its narrow scope. *See, e.g.*, *Flagg Bros. v. Brooks*, 436 U.S. 149, 157–58 (1978) (holding elections is a public function); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352–53 (1974) (eminent domain is a public function); *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir.1993) (a private entity that contracts with the state to provide medical services to prison inmates performs a traditional state function).

When a court addresses the issue of state action under the public-function test, it must conduct a historical analysis of the activity in question to determine whether the activity truly is one that has been traditionally and exclusively performed by the state. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003); *see also Ellison v. Garbarino*, 48 F.3d 192, 196 (6th Cir. 1995) ("Courts that have addressed this issue [public-function test] have typically required some historical analysis to determine whether an action is one traditionally the exclusive prerogative of the state."). The burden is on the plaintiff to make this showing of historical evidence. *Wittstock*, 330 F.3d at 902; *Ellison*, 48 F.3d at 196.

Under these directives, the court cannot find that the service of a civil warrant in a General Sessions case is a function that has traditionally and exclusively been reserved to the State. Although the plaintiff analogizes the process to that of service of a criminal warrant, the procedure is more similar to that of service of a complaint in a civil lawsuit or to the service of a subpoena or notice of deposition in a civil suit, any of which also compel either attendance or a response, and which have not been reserved traditionally or exclusively to the State. In light of the extremely narrow range of activities that courts have found to be state action under the public-function test, coupled with the plaintiff's failure to produce the required historical analysis, the court finds that the public-function test is not satisfied.

Finally, the plaintiff has not met the state-compulsion test either, which requires that the state "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007) (quoting *Wolotsky*, 960 F.2d at 1335). Under this test, more is required than simply the approval or acquiescence of the state in the decisions or actions of the private actor. *Blum v.*

*Yaretsky*, 457 U.S. 991, 1004–05 (1982). The plaintiff here does not remotely allege that the state encouraged, much less coerced or compelled, the defendants into filing suit against him in General Sessions Court.

In sum, the court finds that the plaintiff's allegations and arguments fail to establish that the defendants were functioning as state actors in serving upon him a civil warrant to appear and answer to a lawsuit in the General Sessions Court, and therefore fails to state a claim against them under 42 U.S.C. § 1983. On this basis alone, the § 1983 claims are subject to dismissal

b.  *Whether Plaintiff Alleges Violations of His Constitutional Rights*

In this case, the plaintiff makes a number of allegations regarding the alleged deprivation of his substantive and procedural due process rights arising from the defendants' serving upon him a civil warrant, compelling him to appear and defend against a lawsuit filed against him in the General Sessions Court for Davidson County, Tennessee. (*See* Copy of "Civil Summons," ECF No. 9-2.) It is undisputed, however, that the plaintiff never appeared in General Sessions Court or answered the summons. Instead, he filed a voluntary bankruptcy petition, and the suit against him in General Sessions Court was nonsuited. Although there is a theoretical possibility that the suit might be refiled, as of now, no lawsuit exists and the plaintiff was never required to answer it. No judgment was entered against him. The court therefore finds that the plaintiff cannot establish that he suffered the deprivation of any constitutional rights. For this reason, too, the plaintiff's civil rights claims under 42 U.S.C. § 1983 must be dismissed.

*(2)*  **Fair Debt Collection Practices Act Claims**

The plaintiff alleges that he purchased a vehicle in 2008, financed by defendant Advantage, that he fell behind on payments when he lost his job, and that Advantage repossessed the vehicle. The plaintiff further alleges that he received a letter from Buffaloe in November 2012 demanding payment of more than $8,300, that is, more than the original purchase price of the vehicle. After waiting 30 days in order to be technically in compliance with the FDCPA, as the plaintiff acknowledges, Buffaloe filed suit in General Sessions Court on behalf of Advantage and served upon the plaintiff a civil warrant indicating that the amount of the debt sought was $4,346 plus attorney's fees, prejudgment interest at the contract rate of 21%, and court costs.

The plaintiff purports to bring suit under 15 U.S.C. §§ 1692d, 1692e(10), and 1692f. However, he

does not allege that the defendants engaged in any of the activity prohibited by § 1692d, such as the use or threat of use of violence, the use of obscene language, the publication of a list of consumers who allegedly refuse to pay debts, the advertisement for sale of any debt, or making repeated telephone calls with the intent to annoy or harass, *id.* § 1962d, or other harassing acts. He does not specifically allege that, by sending him a single letter and filing a lawsuit, Buffaloe engaged in the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning [the plaintiff]," as prohibited by § 1692e(10). Further, although he vaguely alleges a violation of 15 U.S.C. § 1962f, the plaintiff does not identify any action taken by the defendants that qualifies as an "unfair or unconscionable" practice under that provision.

Instead, the plaintiff alleges that the filing of a General Sessions action and serving a civil warrant on him in and of itself was for the purpose of "gain[ing] an unfair advantage over the Plaintiff," with knowledge that the practice violated the plaintiff's constitutional rights, that it "instantaneously restrained [the plaintiff] of his freedom, and [placed him] under threat of garnishment of his wages and/or other assets Plaintiff may possess if the appearance was not made, as Plaintiff no longer perceived that he was free beyond the order of the court or the threat of its jurisdiction." (ECF No. 1, at 13–14; *see id.* at 4–5 (alleging that Buffaloe's practice of filing debt-collection lawsuits in other courts in Tennessee, and its intentional choice to pursue litigation in the General Sessions Court, "knowing that such processes vividly emanates *prima facie* evidence of unconstitutionality and legal infirmity, willfully acting in a manner deceptive towards debtors regarding their rights, often from a standpoint of omission, depending primarily on the ignorance of the debtor. That all such deprivations constitutes an intentional and malicious infringement of the Due Process and Equal Protection clauses of the Fourteenth Amendment of the United States Constitution, under color of state law, 42 U.S.C. § 1983, and 15 U.S.C. §§ 806, 807(10) and 808 [sic] [15 U.S.C. §§ 1692d, 1692e(10), and 1692f].").

In other words, the allegations in the complaint do not support a claim for violation of the FDCPA under any of the statutory provisions referenced. Instead, the plaintiff appears to be arguing that filing suit in the General Sessions Court and the use of the civil warrant procedure for instituting the lawsuit and serving the plaintiff, in and of themselves, violate the FDCPA. In response to the defendants' motion for summary judgment, after devoting sixteen pages of argument to his civil rights claims, the plaintiff

devotes one paragraph to his FDCPA claim. There, he argues only that "all such actions as described above are also violations of Fair Debt Collection Practices Act §§ 806, 807(10) and 808 [15 U.S.C. §§ 1692d, 1692e(10), and 1692f]. Because Plaintiff contends so, and because of the general application of the statute, the Plaintiff simply resubmits the arguments previously rendered." (ECF No. 14, at 24.)

The plaintiff offers no legal support for how the use of the General Sessions Court's civil warrant procedure, even if it did constitute a civil rights violation, also violates the FDCPA. The court concludes that the plaintiff's allegations, even if accepted as true, fail to establish a violation of the FDCPA. The motion to dismiss the FDCPA claims will also be granted.

### (3) State Law Claims

Having concluded that the plaintiff's federal claims are subject to dismissal for failure to state a claim for which relief may be granted, the court will decline to exercise jurisdiction over the plaintiff's state law claims and will dismiss those claims without prejudice.

### B. Plaintiff's Motion for Summary Judgment

Because the court has found that the defendants are entitled to dismissal of the claims against them under Rule 12(b)(6), the court has necessarily found that the plaintiff has not established that he is entitled to summary judgment, as a matter of law, as to any of the claims asserted in his complaint.

## III. CONCLUSION

For the reasons set forth herein, the plaintiff's motion to amend his complaint will be denied; the defendants' motions to dismiss will be granted, and the plaintiff's motion for summary judgment will be denied. This action will be dismissed in its entirety. An appropriate order is filed herewith.

_____
Aleta A. Trauger
United States District Judge